# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CRONIMET HOLDINGS, INC., a Delaware corporation, EDWARD J. NEWMAN, an individual, and JOHN D. JOYCE, an individual, | ) ) ) ) ) | |
| Plaintiffs/Counter-Defendants, | ) ) | No. 14 C 3503 |
| v. | ) ) | Judge Sara L. Ellis |
| KEYWELL METALS, LLC (f/k/a KW METALS ACQUISITION, LLC), | ) ) ) | |
| Defendant/Counter-Plaintiff. | ) | |

## OPINION AND ORDER

After spirited bidding with Plaintiff Cronimet Holdings, Inc. ("Cronimet"), Defendant Keywell Metals, LLC ("Keywell Metals") acquired the assets of Keywell, LLC ("Keywell") in December 2013. Two of Keywell's employees, Plaintiffs Edward J. Newman and John D. Joyce, decided not to join Keywell Metals, however, and instead were hired by Cronimet in May 2014, precipitating this lawsuit. Cronimet, Newman, and Joyce (collectively, the "Cronimet Parties") filed the suit seeking a declaration that Cronimet could employ Newman and Joyce regardless of a non-disclosure agreement between Cronimet and Keywell (the "Cronimet NDA") and non-compete agreements Newman and Joyce had with Keywell. Keywell Metals responded by filing counterclaims against the Cronimet Parties, seeking relief for the following claims: (1) preliminary and permanent injunctive relief against Cronimet for breach of the Cronimet NDA, (2) preliminary and permanent injunctive relief against Newman and Joyce for breach of the non-compete agreements, (3) breach of the Cronimet NDA by Cronimet, (4) breach of the non-compete agreements by Newman and Joyce, (5) breach of fiduciary duty by Newman and Joyce,

(6) violation of the Illinois Trade Secrets Act ("ITSA"), (7) misappropriation of confidential information and unfair competition, (8) tortious interference with contract by Cronimet, (9) civil conspiracy, and (10) unjust enrichment. The Cronimet Parties seek to dismiss all but the breach of fiduciary duty and ITSA claims. Because the Court finds that Keywell Metals does not have standing to enforce the Cronimet NDA or the non-compete agreements, all claims based on those agreements are dismissed. Additionally, Keywell Metals' claims for misappropriation of confidential information, unfair competition, and unjust enrichment are dismissed because they are preempted by ITSA as they depend on the existence of confidential information for their viability. Keywell Metals' claim for civil conspiracy is dismissed to the extent it relates to the underlying breach of contract, misappropriation of confidential information, unfair competition, and unjust enrichment allegations but may proceed with respect to Keywell Metal's remaining claims of breach of fiduciary duties and trade secret violations.

## BACKGROUND[1]

**I.  Purchase of Keywell's Assets**

Keywell was a leading supplier of recycled titanium, high-temperature alloys, and stainless steel. Its headquarters were in Chicago, Illinois, although it had operations throughout the United States. In May 2013, Keywell enlisted Eureka Capital Markets, LLC ("Eureka") to help Keywell sell its assets. Eureka identified 186 potential purchasers, including Cronimet. Of

---

[1] The facts in the background section are taken from Keywell Metals' Second Amended Counterclaim and the exhibits attached thereto and are presumed true for the purpose of resolving the Cronimet Parties' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the Second Amended Counterclaim and central to Keywell Metals' claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.* The Court may also take judicial notice of matters of public record. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

these 186 potential purchasers, 59 executed non-disclosure agreements, 41 received access to an online data room, and 9 conducted site visits. Cronimet signed its non-disclosure agreement with Keywell—the Cronimet NDA—on June 28, 2013. The Cronimet NDA prohibited Cronimet from using or disclosing any Keywell confidential and financial information that Cronimet obtained during its negotiations with Keywell. Cronimet also agreed that, for a period of 24 months (i.e. until June 28, 2015), it would not hire any of Keywell's officers, directors, or other Keywell employees with whom Cronimet came into contact during negotiations, except with Keywell's prior written consent.

On September 21, 2013, Cronimet and Keywell executed an asset purchase agreement by which Cronimet was to serve as the stalking horse bid for Keywell's assets in a Bankruptcy Code Section 363 sale process. On September 24, Keywell filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. *In re SKG Ventures, LLC, f/k/a Keywell, LLC*, No. 13-37603 (Bankr. N.D. Ill). On September 26, Keywell filed a motion with the bankruptcy court seeking approval of the sale of its assets by way of a specified bid procedure. That motion was granted on October 21. An auction was held on December 2, with both Keywell Metals and Cronimet bidding on Keywell's assets. Keywell Metals ultimately prevailed.

On December 12, the bankruptcy court entered an order authorizing the sale of Keywell's assets to Keywell Metals. On that same day, Keywell and Keywell Metals entered an asset purchase agreement. The sale order provided that "[t]he transactions contemplated under the [asset purchase agreement] do not amount to a consolidation, merger, or *de facto* merger of [Keywell Metals] and [Keywell] and/or [Keywell's] estate, there is no substantial continuity between [Keywell Metals] and [Keywell], there is no continuity of enterprise between [Keywell]

3

and [Keywell Metals], [Keywell Metals] is not a mere continuation of [Keywell] or its estate, and [Keywell Metals] does not constitute a successor to [Keywell] or its estate under applicable state law." Ex. 4 to Second Am. Counterclaim, Sale Order, ¶ 24. It went on to state that, other than as provided under the asset purchase agreement, Keywell Metals did not assume "any employment or labor agreements, consulting agreements, severance agreements, change-in-control agreements, or other similar agreements to which [Keywell] is or was a party." *Id.* The transactions contemplated by the asset purchase agreement were consummated on December 31, 2013, at which point Keywell Metals began operations. As part of these transactions, Cronimet received a break-up fee of $450,000 for its role as the stalking horse bidder.

## II. Newman and Joyce's Employment History

Newman began employment with Keywell in 1979. In 2013, Newman was Keywell's Executive Vice President – Titanium and HTA Commercial. Joyce began working at Keywell in 1995. In 2013, Joyce was Keywell's Vice President of Purchasing. Both Newman and Joyce executed non-compete agreements in 1997, Newman on June 30 and Joyce on July 31. These non-compete agreements prohibited Newman and Joyce from disclosing Keywell's confidential or proprietary information or trade secrets without Keywell's prior written approval. Newman and Joyce also agreed that, for 24 months after their employment with Keywell was terminated, they would not become employed by certain companies. The prohibition extended to employment with Cronimet.

On December 20, 2013, Keywell Metals offered Newman and Joyce employment with Keywell Metals in positions that were substantially similar to those they held with Keywell. Newman and Joyce both declined their offers and resigned their positions from Keywell on December 30, 2013. On May 5, 2014, Newman and Joyce informed Keywell Metals that

4

Cronimet had offered them jobs starting May 15, 2014 and that they intended to accept the Cronimet offers. On May 9, Keywell Metals responded, objecting to Newman and Joyce working for Cronimet and stating that it expected them to abide by their non-compete agreements. On May 12, Newman and Joyce took the position that Keywell Metals had not acquired the non-compete agreements pursuant to the asset purchase agreement with Keywell. That same day, Keywell and Keywell Metals jointly informed Cronimet that they objected to Cronimet's violation of the Cronimet NDA and threatened legal action if the offers of employment to Newman and Joyce were not rescinded. Nonetheless, Newman and Joyce began their employment with Cronimet on May 19, 2014.

### III. The Ensuing Litigation

On May 14, 2014, the Cronimet Parties filed this lawsuit seeking a declaration that Keywell Metals could not enforce the Cronimet NDA and the non-compete agreements. On May 21, Keywell Metals filed an adversary complaint in the bankruptcy court against Keywell and the Cronimet Parties seeking a temporary restraining order and permanent injunctive relief preventing Cronimet from employing Newman and Joyce. Keywell Metals argued that it acquired the Cronimet NDA and the non-compete agreements from Keywell in the asset purchase agreement that the bankruptcy court approved in December 2013. On May 28, the bankruptcy court dismissed the adversary complaint, finding that the Cronimet NDA and the non-compete agreements were not purchased by Keywell Metals in the asset purchase agreement. Keywell Metals filed a notice of appeal on June 5, 2014.[2] After the notice of appeal was filed, however, Keywell Metals and Keywell reached a settlement, with Keywell agreeing to assign any and all of Keywell's right, title, and interest in, to, and under the Cronimet NDA and the non-compete agreements to Keywell Metals. On July 8, Keywell filed a motion to approve

---

[2] The appeal was dismissed on September 2, 2014.

5

that settlement agreement in the bankruptcy court. The Cronimet Parties objected. The bankruptcy court approved the settlement agreement on August 6. Pursuant to the settlement agreement, on August 19, Keywell assigned any and all of Keywell's right, title, and interest in, to, and under the Cronimet NDA and the non-compete agreements to Keywell Metals. Keywell Metals then filed the Second Amended Counterclaim at issue here.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I. **Keywell Metals' Standing to Enforce the Cronimet NDA and the Non-Compete Agreements**

The Cronimet Parties argue that Keywell Metals' claims based on the Cronimet NDA and the non-compete agreements must be dismissed because Keywell Metals has no standing to enforce these agreements. In the Second Amended Counterclaim, Keywell Metals asserts four possible bases for its ability to enforce these agreements: (1) it purchased Keywell's assets,

6

including the Cronimet NDA and the non-compete agreements, in the asset purchase transaction with Keywell in December 2013; (2) it is the successor to Keywell's interest in the agreements; (3) it is an intended third party beneficiary to the agreements; and (4) it is the owner of the agreements as a result of the August 2014 assignment agreements with Keywell. In response to the Cronimet Parties' motion to dismiss, Keywell Metals focuses on the second, third, and fourth bases, essentially abandoning the argument that it acquired the agreements in the December 2013 asset purchase transaction. Indeed, the argument that Keywell Metals purchased the agreements was considered and rejected by the bankruptcy court in May 2014. Although Keywell Metals appealed the decision, the appeal was voluntarily dismissed in September. Thus, the Court need not consider whether Keywell Metals purchased the agreements, as that issue has effectively been abandoned by Keywell Metals and, in any event, has already been decided against it. *See Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 649 F.3d 539, 547–49 (7th Cir. 2011) (elements of claim preclusion established where claim had been fully litigated in adversary proceeding in bankruptcy court). The Court will instead proceed to the other three bases Keywell Metals pursues in its response to the motion to dismiss.

  A.  **Validity of the August 2014 Assignment**

The parties primarily focus on whether the agreements are assignable. Keywell Metals argues that it validly acquired the agreements by way of assignment from Keywell. On the other hand, the Cronimet Parties contend that the agreements could not be assigned without their consent, and that, even if they could be assigned, any rights under the agreements were extinguished before they were assigned.

Before addressing the substance of their disagreement, the parties dispute what law should be applied to determine whether the agreements are assignable. As the Court has

diversity jurisdiction over this case, it must apply Illinois' choice of law rules to determine the applicable substantive law. *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004). The Cronimet NDA and the non-compete agreements include Illinois choice of law provisions. Illinois follows Section 187 of the Restatement (Second) of Conflict of Laws in determining whether to give effect to a choice of law provision. *Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Illinois*, 568 N.E.2d 9, 14, 209 Ill. App. 3d 144, 154 Ill. Dec. 9 (1990). Section 187 provides:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187 (1971). Section 187 has been interpreted to mean that "the parties' choice of law governs unless (1) the chosen State has no substantial relationship to the parties or the transaction or (2) application of the chosen law would be contrary to a fundamental public policy of a State with a materially greater interest in the issue in dispute." *Int'l Surplus Lines*, 568 N.E.2d at 14.

The parties agree that Illinois law applies to the Cronimet NDA. But the Cronimet Parties argue that despite the choice of law provision in the non-compete agreements, Pennsylvania law should apply to the non-compete agreements because Newman and Joyce are Pennsylvania residents, Cronimet is located in Pennsylvania, and Pennsylvania has a strong policy barring the assignment of non-compete agreements without the consent of all parties involved. Keywell Metals responds that the Court need not make any inquiry into whether Pennsylvania law applies pursuant to § 187(2) because the issue of assignability is one that could have been explicitly included in the agreements but was not. Thus, according to Keywell Metals, the inquiry begins and ends with § 187(1). Keywell Metals relies on *Stromberg Metal Works, Inc. v. Press Mechanical Inc.*, 77 F.3d 928, 933 (7th Cir. 1996), in which the Seventh Circuit confined its analysis to § 187(1), concluding that "[b]ecause individual liability could be created or avoided by contract, Illinois would stop with the approach of § 187(1)." But the parties have not identified nor has the Court found an Illinois case following this approach, and in the one Illinois Appellate Court decision to which Keywell Metals points the Court acknowledged that the analysis does not end at § 187(1) but continues to § 187(2). *See Ocon v. Thermoforming Sys., LLC*, 2013 IL App (1st) 121670-U, ¶ 20. The Court need not decide how Illinois courts would interpret § 187 in this situation or what law applies to the non-compete agreements, however. Regardless of whether Pennsylvania or Illinois law applies, the result is the same: the assignment of the Cronimet NDA and the non-compete agreements to Keywell Metals was ineffective.

Under Pennsylvania law, the assignment was ineffective because the non-compete agreements did not contain an assignability provision and Newman and Joyce did not consent to the assignment. *Hess v. Gebhard & Co.*, 808 A.2d 912, 922 (Pa. 2002). Illinois, on the other

9

hand, does not have a *per se* rule prohibiting assignment. Courts that have considered the issue have generally predicted that Illinois would permit assignment of a non-compete agreement without consent. *See AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 923–24 (N.D. Ill. 2001) ("Without any Illinois precedent holding that restrictive covenants may never be assigned without consent, we are unwilling to anticipate new public policy restrictions on contract rights."). The Cronimet Parties challenge this, arguing that the factual situation here is different, as Newman and Joyce never worked for Keywell Metals and thus cannot be viewed as impliedly consenting to the assignment of their restrictive covenants. The Court need not resolve the issue, for even assuming that Illinois allows assignment without mutual consent in this situation, the agreements are nonetheless unenforceable.

Although the Cronimet NDA is not technically a covenant not to compete but rather a restraint on trade, its validity and enforceability is analyzed in essentially the same way as if it were a covenant not to compete. *See H & M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc.*, 805 N.E.2d 1177, 1183–84, 209 Ill. 2d 52, 282 Ill. Dec. 160 (2004). Thus, they will be analyzed together. The Cronimet NDA and the non-compete agreements are only enforceable if they protect Keywell's legitimate business interests. *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396–97, 2011 IL 111871, 358 Ill. Dec. 322 (2011); *H & M*, 805 N.E.2d at 1183–84. Whether Keywell has a legitimate business interest is determined from the totality of the circumstances, including, for example, "the near-permanence of customer relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions." *Reliable Fire Equip.*, 965 N.E.2d at 403. A company may also have a legitimate interest in maintaining a stable work force, so as to support a no-hire provision

10

like that contained in the Cronimet NDA. *See, e.g.*, *Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 782–87 (N.D. Ill. 2011) (collecting cases).

The Cronimet Parties argue that any legitimate business interest Keywell had in the Cronimet NDA or the non-compete agreements was extinguished in December 2013 when Keywell ceased doing business so that the agreements were unenforceable when they were assigned to Keywell Metals in August 2014. *See Frazier v. Dettman*, 569 N.E.2d 1382, 1386, 212 Ill. App. 3d 139, 155 Ill. Dec. 771 (1991) ("It makes no sense to protect the partnership's relationship with its patients when they are no longer serviced by the partnership."); *Herring Gas Co. v. Pine Belt Gas, Inc.*, 2 So. 3d 636, 640 (Miss. 2009) ("Generally, the termination of an employer's business also terminates the restrictive employment covenant, because the abandonment or termination of the business extinguishes the covenant altogether."). In *Herring Gas*, the Mississippi Supreme Court considered a situation similar to that here, where the purchaser of a company's assets sought to enforce a covenant not to compete that a former employee had entered with the purchaser's predecessor company. 2 So. 3d at 637. The court found that the attempted assignment of the covenant not to compete from the predecessor to the purchaser was not effective because it was made 24 days after the parties' asset purchase agreement when the predecessor was no longer in business. *Id.* at 640. At that time, it was impossible for the employee to compete with a company no longer in business. *Id.*

Keywell Metals responds that Keywell continued to have a legitimate business interest in the agreements until their assignment in August 2014 because the asset purchase agreement provides that Keywell Metals would pay Keywell a percentage of the earnings from one of Keywell Metals' businesses for a period of four years after the acquisition, giving Keywell a continuing financial interest in ensuring that the Cronimet Parties do not divert business to a

11

competitor. But this delayed payment arrangement does nothing to change the fact that Keywell was not to further engage in the business it sold to Keywell Metals. Indeed, as part of the asset purchase agreement, Keywell agreed not to compete with Keywell Metals for a period of time, demonstrating that it had removed itself entirely from its previous line of business. Thus, after the asset purchase agreement, Keywell had no further interest in its customers, its confidential information or trade secrets, or retaining a stable workforce; those interests were all transferred to Keywell Metals. Because Keywell did not have a legitimate business interest in enforcing the Cronimet NDA or the non-compete agreements once its assets were sold to Keywell Metals, like in *Herring Gas*, its belated assignment of those agreements eight months after the asset purchase agreement was not effective under Illinois law. *See Frazier*, 569 N.E.2d at 1386; *Herring Gas*, 2 So. 3d at 640. Thus, regardless of whether Illinois or Pennsylvania law applies to the assignment issue, the Court finds that Keywell Metals cannot enforce the Cronimet NDA or the non-compete agreements as Keywell's assignee.

### B. Keywell Metals as a Third Party Beneficiary

Alternatively, Keywell Metals argues it is a third party beneficiary of the Cronimet NDA and the non-compete agreements.[3] A third party may only enforce a contract when the contracting parties entered the contract for the direct, and not merely the incidental, benefit of that third party. *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924, 388 Ill. App. 3d 1017, 329 Ill. Dec. 82 (2009). The Court must examine the language of the contract to determine whether the contracting parties intended to directly benefit a third party. *Id.* The parties'

---

[3] The parties do not identify any differences between Illinois and Pennsylvania law on this or any other issue addressed in the motion to dismiss nor claim that Pennsylvania law should apply. Thus, the Court will apply Illinois law, the law of the forum state, to the remainder of the issues addressed in this Opinion, without further discussion of Pennsylvania law. *See TKK USA, Inc. v. Safety Nat'l Cas. Corp.*, 727 F.3d 782, 786 (7th Cir. 2013).

intention "must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs." *Id.*

Keywell Metals is not an intended beneficiary of the non-compete agreements. The signatories entered into those agreements in 1997, well before any contemplated sale of Keywell's assets. The non-compete agreements do not indicate that their protections flow to Keywell's successors or assigns or that any other party would be a third party beneficiary of the non-compete agreement. Without any express indication that the agreement was entered into for the benefit of a subsequent purchaser of Keywell's business, Keywell Metals cannot enforce the non-compete agreements as a third-party beneficiary. *See id.*

The Cronimet NDA also does not specifically mention Keywell Metals by name as a party that the agreement was intended to benefit. It describes a potential transaction between Cronimet and Keywell but does not include any language that would suggest that the restrictions by which Cronimet agreed to abide would carry over to a purchaser of Keywell's assets. Although it is possible that the parties contemplated that the no-hire provision of the Cronimet NDA would bind Cronimet in the event that Keywell's assets were purchased by another company, this is not reflected in the Cronimet NDA as required by Illinois law. *See Estate of Willis v. Kiferbaum Constr. Corp.*, 830 N.E.2d 636, 643, 357 Ill. App. 3d 1002, 294 Ill. Dec. 224 (2005) ("Illinois courts require an express provision indicating third-party-beneficiary status because of the strong presumption against construing it, and the presumption can only be overcome by an implication so strong as to be practically an express declaration."). Keywell Metals has not pointed to any express language in the Cronimet NDA to overcome the presumption that Cronimet and Keywell intended the agreement to apply only to them and not to third parties. *See 155 Harbor Drive Condo. Ass'n v. Harbor Point Inc.*, 568 N.E.2d 365, 375,

13

209 Ill. App. 3d 631, 154 Ill. Dec. 365 (1991) (plaintiffs did not carry their burden to demonstrate that they were third party beneficiaries of contract where contract made no reference to plaintiffs and did not suggest an intent to benefit them). "It is not enough that the parties to the contract kn[ew], expect[ed], or even intend[ed] that others [would] benefit" from the no-hire provision in the event that a transaction took place not with Cronimet but with another party; the contract "must be undertaken for the [third party's] direct benefit and the contract itself must affirmatively make this intention clear." *Waterford Condo. Ass'n v. Dunbar Corp.*, 432 N.E.2d 1009, 1011, 104 Ill. App. 3d 371, 60 Ill. Dec. 110 (1982). Because the Cronimet NDA does not do so, Keywell Metals cannot enforce the no-hire provision of the Cronimet NDA as a third party beneficiary. Thus, this asserted basis for Keywell Metals' standing also fails.

## C. Keywell Metals as Keywell's Successor

Finally, then, the Court must consider whether Keywell Metals may enforce the Cronimet NDA and the non-compete agreements as the successor to Keywell's interest in those agreements. The bankruptcy court's sale order specifically provided that Keywell Metals is not Keywell's successor. The Cronimet Parties argue that this means that Keywell Metals cannot enforce the agreements as the successor to Keywell's interest in those agreements. Keywell Metals acknowledges that it is not Keywell's successor but contends that it is entitled to the benefits of the agreements as the successor to Keywell's interests in the confidential information and trade secrets that it purchased from Keywell. The Court fails to see the legal relevance of the distinction Keywell is attempting to draw.

Black's Law Dictionary defines a "successor in interest" as "[o]ne who follows another in ownership or control of property" and who "retains the same rights as the original owner, with no change in substance." The bankruptcy court has already determined that Keywell Metals did

14

not purchase the Cronimet NDA or the non-compete agreements in the asset purchase agreement, and so Keywell Metals is not the successor in interest to those agreements. Nor can it be the successor in interest to those agreements because it succeeded to Keywell's interest in its confidential information and trade secrets. The Cronimet NDA and the non-compete agreements, although intended to protect Keywell's confidential information and trade secrets, were separate agreements that Keywell entered with the Cronimet Parties that go beyond the protections provided by statute or the common law. By succeeding to Keywell's interest in its confidential information and trade secrets, Keywell Metals acquired the right to enforce these statutory and common law protections in the event of a breach; it did not also obtain the right to enforce independent obligations that the Cronimet Parties undertook by way of contract.

In those cases cited by Keywell Metals or that the Court has found where a company enforced a covenant not to compete as a successor in interest, the company was considered to be a successor corporation. *See Unisource Worldwide, Inc. v. Carrara*, 244 F. Supp. 2d 977, 981–82 (C.D. Ill. Feb. 19, 2003) (noting that defendants had an employment contract with the company that later merged with plaintiff); *Chemetall GMBH v. Zr Energy, Inc.*, No. 99 C 4334, 2000 WL 1808568, at *2–3 (N.D. Ill. Dec. 6, 2000) ("A successor corporation in an asset purchase can enforce confidentiality agreements and covenants not to compete that an employee signed with its predecessor corporation."). For example, in *Hexacomb Corp. v. GTW Enterprises, Inc.*, which Keywell Metals cites, the plaintiff was considered a successor corporation, acquiring the covenants not to compete at issue through an asset purchase agreement that amounted to a "*de facto* merger" of the plaintiff and the prior corporation. 875 F. Supp. 457, 463–64 (N.D. Ill. 1993). Similarly, in *Morrison Metalweld Process Corp. v. Valent*, the court noted that the

plaintiff had bought its assets from its predecessor and thus was its successor in interest.[4] 422 N.E.2d 1034, 1035 n.1, 97 Ill. App. 3d 373, 52 Ill. Dec. 825 (1981). Here, however, Keywell Metals admits that it is not Keywell's successor, and thus these cases do not support its argument that it may enforce the Cronimet NDA and the non-compete agreements as a successor in interest.

Because the Court has found that Keywell Metals has no standing to enforce the agreements at issue under any of the theories asserted, all of Keywell Metals' claims related to the Cronimet NDA and the non-compete agreements (Counts I-IV) are dismissed.

## II. Tortious Interference and Wrongful Inducement Claim (Count VIII)

To state a claim for tortious interference with contract, Keywell Metals must allege (1) the existence of valid and enforceable contracts between Keywell Metals and Newman and Joyce, (2) Cronimet's awareness of the contracts, (3) Cronimet's intentional and unjustified inducement of a breach of the contracts, (4) Newman and Joyce's breach of the contracts, caused by Cronimet's conduct, and (5) damages. *Dopkeen v. Whitaker*, 926 N.E.2d 794, 797, 399 Ill. App. 3d 682, 339 Ill. Dec. 319 (2010). Cronimet argues that the Court should dismiss the tortious interference claim because Keywell Metals cannot enforce the non-compete agreements and thus Cronimet cannot have interfered with or induced the breach of any agreements between Keywell Metals and Newman or Joyce. Keywell Metals agrees that the claim is dependent on Keywell Metals' ability to enforce the non-compete agreements. As the Court has found that Keywell Metals does not have standing to enforce the non-compete agreements, Cronimet could not have interfered with any agreement between Keywell Metals and Newman or Joyce. Thus, Keywell Metals' claim for tortious interference (Count VIII) is dismissed.

---

[4] The agreement being enforced in *Morrison* had also been assigned to the plaintiff. *Morrison*, 422 N.E.2d at 1035 n.1.

### III. Misappropriation of Confidential Information, Unfair Competition, and Unjust Enrichment Claims (Counts VII and X)

In addition to alleging an ITSA violation, Keywell Metals has alternatively pleaded that, to the extent any confidential information is determined not to rise to the level of a trade secret, the Cronimet Parties are liable for misappropriation of confidential information and unfair competition. Additionally, Keywell Metals claims that the Cronimet Parties have been unjustly enriched as a result of their use of Keywell Metals' trade secrets and confidential information. The Cronimet Parties argue that these common law claims are preempted by ITSA, which provides that it "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 Ill. Comp. Stat. 1065/8(a). ITSA "abolishes claims other than those based on contract arising from misappropriated trade secrets, replacing them with claims under the Act itself." *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404 (7th Cir. 2005). But Keywell Metals contends that ITSA's preemption provision is not applicable because its claim for misappropriation of confidential information is for information that does not rise to the level of a trade secret.

There is some dispute as to whether ITSA preemption reaches information that is technically not considered a trade secret but nonetheless asserted to be confidential. In *Hecny*, the Seventh Circuit predicted that Illinois courts would find that ITSA does not preempt claims that are not dependent on "the existence of competitively significant secret information," such as "claims of theft, fraud, and breach of the duty of loyalty that would be sound even if the customer list were a public record." *Id.* at 405. Some courts have interpreted the ITSA preemption provision narrowly, finding it only applies to trade secrets. *See Miller UK Ltd. v. Caterpillar Inc.*, 859 F. Supp. 2d 941, 946 (N.D. Ill. 2012) ("[M]isappropriation of trade secrets is thus all that the Act preempts. Claims based on common law theories such as unjust

17

enrichment or fraudulent inducement as to non-trade-secrets remain untouched."). But others have described ITSA preemption and *Hecny*'s reach more broadly to reach claims founded on the misappropriation of confidential information, regardless of whether such information qualifies as a trade secret or not. *See Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 719–20 (N.D. Ill. 2014) ("While Plaintiffs are correct that the ITSA does not preempt non-confidential information, they have wholly failed to offer any argument that their claim is not based upon misappropriation of confidential information."); *RTC Indus., Inc. v. Haddon*, No. 06 C 5734, 2007 WL 2743583, at *3 (N.D. Ill. Sept. 10, 2007) ("After *Hency* [sic], the test for a non-ITSA claim is not whether the plaintiff arguably could have brought an ITSA claim. Rather, the test if whether the plaintiff's claim would lie if the information at issue were non-confidential."). Most recently, the Seventh Circuit affirmed a district court's finding that a plaintiff's quasi-contract and unjust enrichment claims were preempted by ITSA where they were based on misappropriation of information that did not fall within the statutory definition of a trade secret. *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014). In doing so, the court stated that "Illinois courts have read the preemptive language in the ITSA to cover claims that are essentially claims of trade secret misappropriation, even when the alleged 'trade secret' does not fall within the Act's definition." *Id.*

The Court finds that the situation here closely parallels that in *Spitz*, for Keywell Metals has alleged its misappropriation and unfair competition claims in the alternative to its ITSA claim. Because the claims are dependent on the existence of confidential information, the Court agrees with those decisions extending ITSA preemption to cover common law claims based on misappropriation of confidential information that does not meet the statutory definition of a trade secret. *See Montel Aetnastak, Inc.*, 998 F. Supp. 2d at 720 ("Plaintiffs' common law claims of

18

misappropriation of confidential information are preempted by the ITSA because the passage of the ITSA abolished all common law bases for the misuse of secret information."); *RTC Indus.*, 2007 WL 2743583, at *3 (claims are not preempted under ITSA only if they "would lie if the information at issue were non-confidential"). Under *Hecny*, Keywell Metals' claims for misappropriation of confidential information and unfair competition are preempted, because the claims would not lie absent the confidentiality of the information. *Cf. RTC Indus.*, 2007 WL 2743583, at *3 (noting that breach of fiduciary duty claim would be sound regardless of whether information had remained confidential). Similarly, Keywell Metals' unjust enrichment claim—essentially a claim for restitution—is preempted, regardless of whether the information is found to be protected under ITSA or merely confidential. *See Spitz*, 759 F.3d at 733. Thus, Counts VII and X are dismissed.

## IV. Civil Conspiracy Claim (Count IX)

The Cronimet Parties argue that the civil conspiracy claim fails because the underlying claims related to the Cronimet NDA and non-compete agreements fail. Keywell Metals responds that the civil conspiracy claim encompasses more than just a conspiracy to breach the non-compete agreements, reaching also Newman and Joyce's alleged breach of fiduciary duties, the misappropriation of Keywell Metals' trade secrets and confidential information, unfair competition, and unjust enrichment. To the extent that the claim alleges a conspiracy related to claims that are being dismissed—breach of the non-compete agreements, misappropriation of confidential information, unfair competition, and unjust enrichment—those allegations are also dismissed.

In reply, the Cronimet Parties argue that the remainder of the civil conspiracy claim should be dismissed because the allegations of a conspiracy are conclusory and any conduct after

Newman and Joyce began employment with Cronimet is not actionable as a conspiracy based on the intracorporate conspiracy doctrine. But these arguments cannot be considered because they were only raised in reply. *Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived."). Thus, the remainder of Keywell Metals' civil conspiracy claim related to breach of fiduciary duties and trade secret violations will proceed to discovery.

## CONCLUSION

For the foregoing reasons, the Cronimet Parties' motion to dismiss [40] is granted in part and denied in part. Counts I-IV, VII, VIII, and X are dismissed. Count IX is dismissed to the extent it is premised on allegations of breach of the Cronimet NDA and the non-compete agreements, misappropriation of confidential information, unfair competition, and unjust enrichment. The Cronimet Parties are directed to answer the remaining allegations of the Second Amended Counterclaim by November 21, 2014.

Dated: November 7, 2014

SARA L. ELLIS
United States District Judge